## THE LILLIAN.

(District Court, E. D. Pennsylvania. August 1, 1904.)

### No. 14.

1. SHIPPING ARTICLES—STATUTES—APPLICATION.

Rev. St. § 4511 [U. S. Comp. St. 1901, p. 3068], prescribing the provisions necessary to be inserted in shipping articles, applies to contracts for shipping of crews for American vessels engaged in coastwise trade, and in trade between ports of the United States and the Dominion of Canada.

2. SAME—SEAMEN'S WAGES—CONTRACTS.

A provision of a contract for seamen's services that "the crew shall make no claim for wages or provisions while the vessel is detained by ice prior to departure" was reasonable, and was not in violation of Rev. St. § 4511 [U. S. Comp. St. 1901, p. 3068], specifying the provisions necessary to be inserted in such contracts, and declaring in subdivision 8 [page 3069] that "any stipulations in reference to advance and allotment of wages or other matter not contrary to law" may be inserted.

3. SAME.

Such stipulation was not void under Rev. St. § 4524 [U. S. Comp. St. 1901, p. 3076], providing that a seaman's right to wages and provisions shall be taken to commence either at the time when he commenced his

work, or at the time specified in the agreement for his commencement of work or presence on board, whichever first happens. .

In Admiralty.

E. William Pyle and Joseph Hill Brinton, for libelant.

W. H. G. Gould, for respondent.

HOLLAND, District Judge. The libelant claims wages from January 21 to February 10, 1904, at the rate of $40 per month, upon shipping articles signed by him on January 26, 1904. The respondent admits wages due at that rate from February 1 to February 10, 1904. The disagreement between the parties arises out of the following state of facts: The libelant agreed with Capt. Campbell, of the bark Lillian, to ship with him as mate for a voyage from Philadelphia to Charleston, S. C., for a term of time not exceeding three calendar months, at the rate of $40 per month. Subsequently the shipping articles were executed. The dates mentioned in the articles as of the time of execution by the parties are incorrect and irregular, but it is not necessary to consider this feature of the case, as it does not alter the rights of the parties; and, while some comment was made upon these irregularities at the argument, neither party seriously urged it as effecting the rights of either the libelant or respondent. It is conceded that the libelant, by the terms of the articles of shipment, was to be on board January 21st; and it is further conceded that he complied with this part of the contract, and remained on board up until the 10th day of February, when the vessel stranded and went aground on the Bermuda Islands, was a total loss, and was abandoned by her crew, and the voyage was broken up and terminated. The libelant returned to Philadelphia, and claimed wages from January 21 until February 10, 1904. The articles contained a clause that "the crew shall make no claim for wages or provision while the vessel is detained by ice prior to departure," and as the Lillian did not leave the port at Philadelphia until February 1st, by reason of ice in the Delaware river, the respondent answers that wages cannot be claimed until February 1st. To avoid the effect of this clause, the libelant avers that the delay was not caused by ice in the river, and, even if it was, the clause above referred to is inserted in violation of section 4511, Rev. St. [U. S. Comp. St. 1901, p. 3068], and that he is entitled to wages from the time he was required to be on board, in accordance with the provisions of Rev. St. § 4524 [U. S. Comp. St. 1901, p. 3076].

An examination of the evidence convinces me that the Lillian was detained until the 1st of February by reason of ice in the river, and if the libelant is bound by his contract not to claim wages prior to the departure of the vessel, if detained by ice in the river, then this rule must be dismissed. The provisions of section 4511, Rev. St. by the acts of August 19, 1890, February 18, 1895, and March 3, 1897 [U. S. Comp. St. 1901, p. 3069], have been extended and made applicable to contracts for shipping of crews for American vessels engaged in the coastwise trade, and in trade between ports of the United States and Dominion of Canada. The Occidental (D. C.) 87 Fed. 485. This section requires an agreement in writing to be executed by the master of a vessel and the seamen who ship with him before he starts on a voyage,

requiring certain matters to be specifically set forth for the purpose of protecting seamen against imposition, misunderstanding, and their own improvidence. These provisions necessary to be inserted in shipping articles are set forth in eight subdivisions of this section of the Revised Statutes, and are essential to a valid article of agreement. There is nothing, however, to indicate that other reasonable provisions cannot be entered into and inserted in the agreement. In fact, the eighth subdivision makes provision for this in the following language: "Any stipulations in reference to advance and allotment of wages, or other matter not contrary to law," may be inserted. The agreement not to claim wages if the vessel was detained by reason of ice is not unreasonable, and, if inserted with the knowledge and understanding of libelant, it is part of the contract as binding upon him as the other provisions therein contained. While seamen are the wards of the nation, and many provisions have been enacted for their protection, there is nothing to indicate that any reasonable contract, not contrary to law, into which they enter with full knowledge of its meaning and effect, can be afterward repudiated by them. The Samuel Ober (D. C.) 15 Fed. 621; The Zack Chandler (D. C.) 7 Fed. 684; The L. B. Snow (D. C.) 15 Fed. 282; Boulton v. Moore (C. C.) 14 Fed. 922.

There is nothing in the case of The Bark Shetland et al. v. Johnson, 31 Wash. Law Rep. 411, cited by libelant, in conflict with this view. There was no provision in the agreement in that case either like or similar to the one in this suit. The shipping articles were signed on the 29th day of January, 1902, by the seamen, to go on board the Shetland as seamen for the proposed voyage. The spaces where the time the seamen were to go on board should have been inserted were left blank. The master subsequently filled in "February 26, 1902." As the seamen had been detained for this voyage from January 29, 1902, until the vessel left Wilmington, on February 26th, the court held they were entitled to wages for that time, notwithstanding the fact that the agreement, as subsequently perfected by the master without their consent, showed a later date on which they were to be on board; nor do we think that section 4524, Rev. St. [U. S. Comp. St. 1901, p. 3076], nullifies this provision in the agreement. It provides:

"A seaman's right to wages and provision shall be taken to commence either at the time at which he commences work, or at the time specified in the agreement for his commencement of work, or presence on board, whichever first happens."

This section fixes the time when the seamen's right to wages, specified in an agreement, shall be taken to commence, which is either at the "time at which he commences work," or "at the time specified in the agreement for the commencement of work," or "his presence on board," whichever happens first; but there is nothing to indicate it is different from any other right, and cannot be waived when it is deemed prudent to do so, by a reasonable stipulation between the captain and the seamen, and inserted in the shipping articles, that the wages agreed upon shall not begin until a certain date in the future. It is a guarantied right to every person that he shall be able to enter into such contracts as he may see fit, and any act of Congress or rule of law invoked in derogation of this right must be critically examined and strictly con-

strued. Section 4524, Rev. St., establishes the time at which wages of a seaman begin under articles of shipment, in the absence of any reasonable stipulation therein contained; but we do not think it warrants a construction that takes from a seaman his right of contracting as to when he shall begin to claim his wages, so long as the agreement is reasonable and for the mutual benefit of master and seamen. It enables vessels in these northern, ice-bound climates in winter to contract with crews, and take chances of going out to sea at any time the ice-bound channels became navigable, if they can arrange with their men to take the same chances with themselves, whereas, if this privilege of contracting on this point is denied, the master might be deterred from entering into a contract with a crew because of the uncertainty of navigation and the certainty to pay wages, and both vessel and men during the winter season would be deprived of employment by reason of the fact that the law prevented the execution of a valid agreement on the subject as to when the seamen should claim wages. This would be extending protection to the wards of the nation in a manner greatly to their detriment. We do not think this section warrants this construction.

The amount due from February 1st to February 10th, less deductions, is conceded to be $8.33. This amount has been duly tendered the libelant. Judgment will therefore be entered for the sum of $8.33 in favor of the libelant and against the respondent, without costs.